OPINION OF THE COURT
Margaret Taylor, J.
In their motions for summary judgment, respondents (Tenants) allege that the above nonpayment proceedings must be dismissed on the ground that petitioner (Landlord) is barred from maintaining any action or proceeding for the collection of rents because no certificate of occupancy exists for the premises (the building) and none existed during the period for which rents are claimed. Tenants base their motions on subdivision 1 of section 301 and section 302 (subd 1, par b) of the Multiple Dwelling Law.
The apartments in the building are rented for dwelling purposes and are subject to the Rent Stabilization Law of 1969 *374 (Administrative Code of City of New York, ch 51, tit YY), as amended by chapter 576 of the Laws of 1974. The building is a multiple dwelling and is registered as such with the Office of Code Enforcement. It is uncontroverted that even though the building contains 22 apartment units and that these units are fully occupied, no certificate of occupancy exists for the building and none existed during the period for which rents are claimed.
In the uncontradicted affidavits of the Tenants, they allege that at the time they initially took occupancy they believed they were moving into a building which was fit for habitation, but soon learned that serious defects and conditions of disrepair existed both in their individual apartments and on a building wide scale. Inquiries and complaints made to governmental agencies, such as the Department of Buildings, disclosed that no certificate of occupancy existed for the building. Tenant complaints to the Landlord concerning the need for repairs failed to evoke any adequate response, and numerous conditions of disrepair and faulty workmanship persist in the building.
As documented by the violations information portion of the Department of Housing Preservation and Development (HPD) report dated May 14, 1984, whose violations report was generated by this court’s computer (see Multiple Dwelling Law, § 328), the building is listed as vacant. Furthermore, HPD’s violation report mandates, and did so mandate as of August 16, 1982 (at least one year before the commencement of the Tenants’ residency), that the building (then vacant) not be reoccupied until such time as a certificate of occupancy was obtained for the building. Thus, at the time the Tenants took occupancy, the Landlord acted in violation of the certificate of occupancy requirements of section 301 of the Multiple Dwelling Law and in violation of the specific mandate imposed upon the subject building by governmental authority that the building not be reoccupied in the absence of a certificate of occupancy.
Subdivision 1 of section 301 of the Multiple Dwelling Law, entitled “Certificate of compliance or occupancy”, provides, in relevant part: “No multiple dwelling shall be occupied in whole or in part until the issuance of a certificate by the department that said dwelling conforms in all respects to the requirements of this chapter, to the building code and rules and to all other applicable law”. (Subdivision 1 of section 301 of the Multiple Dwelling Law thereafter sets forth certain exceptions to its mandate, none of which are applicable to the multiple dwelling involved in this case.)
*375 In addition to setting forth a clear and unequivocal mandate, the afore-quoted text of subdivision 1 of section 301 of the Multiple Dwelling Law makes equally obvious the purpose and goals of that mandate, to wit: that multiple dwellings not be occupied for living purposes until the agency entrusted with the enforcement of applicable laws and building codes shall have been satisfied that the dwelling units comply with such laws and shall certify as to such compliance and fitness for habitation.
In reference to dwellings being occupied in violation of the provisions of section 301, section 302 (subd 1, par b) of the Multiple Dwelling Law provides that, during such period of unlawful occupancy: “No rent shall be recovered by the owner of such premises for said period, and no action or special proceeding shall be maintained therefor, or for possession of said premises for nonpayment of such rent.”
It is the well-settled rule of the courts of this State that the prohibitions and penalties provided for by section 302 of the Multiple Dwelling Law are to be enforced. Thus, a landlord may not collect rents nor maintain a proceeding therefor where the multiple dwelling in question is occupied in violation of section 301 of the Multiple Dwelling Law requirement of a certificate of occupancy. (Waters v Panzella, 100 NYS2d 214; Carmel v Appleton, 127 NYS2d 268 [App Term, 1st Dept]; Guarino v Timares, 196 Misc 414, mot for lv to app den 276 App Div 847; Schwarzkopf v Buccafusca, 98 NYS2d 42 [App Term, 1st Dept]; Baum Residence Corp. v Van Rosson, 206 Misc 314 [App Term, 1st Dept].) This rule so enunciated is the expression of the appropriate recognition by the courts that the requirements of section 301 of the Multiple Dwelling Law, designed and intended to ensure that dwellings are safe and fit, can mean little if they are not enforced by recourse to the penalties provided in section 302 of the Multiple Dwelling Law.
While there have been, of course, cases where a defect in a certificate of occupancy has been found to be insufficient to bar a summary proceeding, the facts of such cases are all remarkably different and distinguishable from those of the instant proceeding. Such cases involved, in the main, situations where a certificate of occupancy existed but contained a defect of information or failed to include a dwelling not involved in the litigation, or where the tenants themselves were found to be the cause of the landlord’s inability to obtain a certificate of occupancy. Virtually without exception, however, the courts in these cases underscored the facts that the landlords were in substantial compliance with the requirements of the law and that the defects were *376 minor and in no way affected the tenants in question (such as the existence of conditions or defects injurious to the health, safety or comfort of the tenants).
Petitioner cites several “loft” cases. Such cases clearly do not apply here. Lofts are sui generis and, as such, have their own set of laws as was first promulgated in 1982 by the legalization of interim multiple dwellings. Although the petitioner cites “loft” cases, neither the petitioner nor the Tenants refer to these premises as a loft or an interim multiple dwelling nor should it be referred to as such. There are no facts in the record indicating that the Interim Multiple Dwelling Law (Multiple Dwelling Law, § 280 et seq.) is either applicable or relevant here. All the provisions and penalties of sections 301 and 302 of the Multiple Dwelling Law remain in full force and effect and are clearly applicable to the building which is the subject of this nonpayment proceeding.
Compliance with section 301 of the Multiple Dwelling Law is no mere bureaucratic technicality, relating as it does to critical life, health and safety standards. When a landlord obtains a certificate of occupancy, the courts, the public and the immediately affected tenants can have some assurance that when the building was constructed or rehabilitated there was at least minimal compliance with vital and essential health and safety codes.
The penalty of depriving the landlord of any rents for the entire period when it has no certificate of occupancy is a most effective self-enforcing mechanism. It should not be eviscerated by the courts because of misguided sympathy for law-breaking landlords. This was precisely what the Legislature contemplated when it enacted sections 301 and 302 of the Multiple Dwelling Law.
By reason of the foregoing this court holds that, as a matter of law, the instant proceedings are barred and that the petitioner Landlord may not now, or, at anytime in the future, seek to collect any rents from respondent Tenants for any period during which there is no certificate of occupancy for the building. Respondents are, therefore, entitled to a judgment in their favor dismissing the petitions with prejudice. The petitions are, therefore, dismissed.